John D. SHAKOUR, Korneliske Shakour, Robert A. Shakour, Marina S. Haber–Shakour and Richard K. Shakour, Plaintiffs,

v.

The FEDERAL REPUBLIC OF GERMANY and The Estate of John D. Hollingsworth, Decedent, Defendants.

No. 00CV2326 (ADS)(ARL).

United States District Court, E.D. New York.

May 2, 2002.

John D. Shakour, Baldwin, NY, Pro se.

Korneliske Shakour, Totowa, NJ, Pro se.

Robert A. Shakour, West Vancouver, British Columbia, Pro se.

Marina Haber–Shakour, Totowa, NJ, Pro se.

Richard K. Shakour, Dowington, PA, Pro se.

Dechert Price & Rhoads by Robert A. Cohen, Debra D. O'Gorman, and Najma Q. Rana, New York City, for Defendant The Estate of John D. Hollingsworth.

No Appearance, The Federal Republic of Germany.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action arises out of a claim by *pro se* plaintiffs John D. Shakour ("J. Shakour"), Korneliske Shakour ("K. Shakour"), Robert A. Shakour ("R.A. Shakour"), Marina S. Haber–Shakour ("Haber–Shakour") and Richard K. Shakour ("R.K. Shakour") (collectively, the "plaintiffs") against the defendants the Federal Republic of Germany ("Germany") and the Estate of John D. Hollingsworth (the "Hollingsworth Estate"). The plaintiffs allege that the defendants engaged in a conspiracy to deprive them of rights to certain property in Germany. Presently before the Court is a motion by the Hollingsworth Estate to dismiss the amended complaint pursuant to Rules 8(a), 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

The following facts are taken from the amended complaint. At the outset, the Court notes that the amended complaint is largely unintelligible and it contains a number of unexplained exhibits, many written in German.

The plaintiffs allege that one Margarethe Otto ("M. Otto") conveyed her estate, involving three factories in the former East Germany, namely one in Leisnig, Germany and two in Mittweida, Germany, to J. Shakour in her will of July 6, 1980. The factories produced unspecified products in the carding industry. Carding involves the process in which machines clean and straighten wool or cotton in preparation for the spinning and weaving of material into clothing or fabric.

The plaintiffs further allege that in 1948, prior to the disposition set forth above, the German Democratic Republic (the "GDR") had expropriated the three factories at issue in this case. The GDR then renamed the factories and operated them until the downfall of the GDR in 1990. The plaintiffs also allege that the GDR purchased an additional factory in Neustadt (Orla), Germany on March 4, 1949 which expanded its operation in the carding industry.

The plaintiffs next allege that since 1990, they have attempted unsuccessfully to obtain restitution for or the return of the factories allegedly conveyed to J. Shakour from various German courts and administrative agencies. The plaintiffs also claim that they retained attorneys in Germany who advised them that they are not entitled to the factories allegedly conveyed to J. Shakour on the ground that the GDR expropriated the property in 1948.

On April 21, 2000, the plaintiffs commenced this action against the Federal Republic of Germany alleging that the

German government, the German courts and administrative agencies and the plaintiffs' attorneys in Germany participated in a conspiracy to deprive them of their rights to the property allegedly conveyed in the will of M. Otto. On March 15, 2001, shortly after K. Shakour read an article about the death of John D. Hollingsworth ("Hollingsworth") and Hollingsworth's involvement in the textile industry, the plaintiffs filed an amended complaint adding the Hollingsworth Estate as a defendant. In particular, the plaintiffs allege that Hollingsworth was part of the conspiracy with Germany because he purchased the factory in Neustadt (Orla) on April 12, 1991. The amended complaint contains no specific causes of action. Presently before the Court is a motion by the Hollingsworth Estate to dismiss the amended complaint pursuant to Rules 8(a), 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

In addressing the present motion, the Court is mindful that the plaintiffs are proceeding *pro se* and that their submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). The Court recognizes that it must make reasonable allowances so that *pro se* plaintiffs do not forfeit rights by virtue of their lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir.1983).

Indeed, district courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' "

*McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law....' " *Traguth*, 710 F.2d at 95 (citation omitted).

The Court will address the issues of jurisdiction first because a dismissal for lack of jurisdiction renders all other claims moot. *See Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 1570, 143 L.Ed.2d 760 (1999) (stating that subject matter jurisdiction and personal jurisdiction go to the power of the court to adjudicate the merits of a case). Here, the Court will analyze its subject matter jurisdiction before addressing personal jurisdiction. *See Ruhrgas*, 526 U.S. at 583, 119 S.Ct. at 1569 (stating that the district court may choose to first address either subject matter jurisdiction or personal jurisdiction).

### A. Subject Matter Jurisdiction

District courts must police subject matter jurisdiction on their own initiative. Fed.R.Civ.P. 12(h)(3); *Lyndonville Savings Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir.2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*."). When evaluating subject matter jurisdiction, a court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir.1976).

■ A court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in affidavits may not be considered. *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

### 1. As to Germany

■ The Foreign Sovereign Immunities Act of 1976 (the "FSIA") provides the sole basis for securing subject matter jurisdiction over a foreign state in federal court. *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales,* 235 F.3d 738, 746 (2d Cir.2000). Under the FSIA, a foreign state is immune from suit unless one of the statutory exceptions applies. *Reiss,* 235 F.3d at 746–47. A plaintiff bears the burden of establishing that her or his claim falls within one of the statutory exceptions to sovereign immunity, while the ultimate burden of persuasion remains with the foreign state. *See Drexel Burnham Lambert Group Inc. v. Committee of Receivers for Galadari,* 12 F.3d 317, 325 (2d Cir.1993).

The statutory exceptions are essentially: (1) where the foreign state waives immunity; (2) where the action is based on a commercial activity by the foreign state carried on in the United States or has a direct effect in the United States; (3) where the action relates to the expropriation of property located in the United States; (4) where the action relates to property in the United States acquired by succession or gift; (5) where the action relates to a tort committed in the United States; (6) where the action relates to the enforcement of an arbitration agreement; and (7) where the action relates to personal injury or death caused by acts of torture, extrajudicial killing, aircraft sabotage or hostage taking. *See* 28 U.S.C. § 1605(a)(1)-(7) (2002).

It is undisputed that Germany is a foreign state under the FSIA. *See* 28 U.S.C. § 1603 (2002). As such, to have subject matter jurisdiction in their action against Germany, the plaintiffs must establish that one of the statutory exceptions to immunity exists. Neither the amended complaint nor the affidavit submitted in opposition to the motion to dismiss set forth any of the exceptions to sovereign immunity.

■ In addition, the Court finds that none of the exceptions apply. The first exception does not apply because Germany has not waived its right to immunity. The second exception does not apply because the action is not based on a commercial activity of the German government. In particular, the action is based upon the expropriation of property by the GDR. This is a public, not a commercial act. *See Saudi Arabia v. Nelson,* 507 U.S. 349, 359–60, 113 S.Ct. 1471, 1478–79, 123 L.Ed.2d 47 (1993) (stating that as to the commercial activity exception "a state is immune from the jurisdiction of foreign courts as to its sovereign or public acts (*jure imperii*), but not as to those that are private or commercial in character (*jure gestionis*).". Moreover, neither the GDR's expropriation of the factories nor the alleged conspiracy by Germany had a direct effect in the United States.

The third exception does not apply because the action does not relate to the expropriation of property located in the United States. The fourth exception does not apply because the action does not relate to property in the United States acquired by succession or gift. The fifth exception does not apply because the action does not relate to a tort committed in the United States but rather relates to an

alleged tort committed in Germany. The sixth exception does not apply because the action does not relate to the enforcement of an arbitration agreement. Finally, the seventh exception is inapplicable because the action does not relate to personal injury or death.

Because the plaintiffs have failed to establish that an exception to sovereign immunity exists, the Court finds that it lacks subject matter jurisdiction with respect to Germany. Accordingly, *sua sponte*, the action against Germany is dismissed.

### 2. As to the Hollingsworth Estate

■■■■ Diversity jurisdiction as set forth in 28 U.S.C. § 1332 provides in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties....

28 U.S.C. § 1332(a)(3) (2002). The citizenship of the Hollingsworth Estate for purposes of diversity jurisdiction is determined by reference to the decedent's domicile. *Sluberski v. Lakeside Manor Home for Adults*, No. 96–2689, 1996 WL 1088902, *1 (E.D.N.Y. Nov. 19, 1996); *Adler v. Adler*, 862 F.Supp. 70, 72 (S.D.N.Y.1994).

Complete diversity exists between the plaintiffs who are citizens of the Netherlands and Canada (K. Shakour), Canada (M. Haber–Shakour), New York and Canada (J. Shakour), Canada (R.A. Shakour) and Pennsylvania (R.K. Shakour), *see* Affidavit of K. Shakour dated June 16, 2001 (the "K. Shakour Affidavit") ¶¶ 1–5, and Hollingsworth who was a citizen of South Carolina. *See* Affidavit of Andy B. Rasor dated June 1, 2001 (the "Rasor Affidavit").

In addition, the plaintiffs seek damages in excess of $75,000. Accordingly, diversity jurisdiction exists with respect to the Hollingsworth Estate.

### B. Personal Jurisdiction

■■■■ "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). The plaintiff's burden depends on the posture of the case. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). Before discovery, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists, based upon allegations of fact which will be taken as true. *Id.See also Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998).

"[W]here the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held—the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996) (internal quotations and citations omitted). "[W]hen an evidentiary hearing is held, the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence." *Id.*

■■■■ A district court may decide a motion to dismiss for lack of personal jurisdiction on "the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary

hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). In this case, the Court will decide the motion on the basis of the amended complaint and the affidavits submitted in support and opposition to the present motion.

### 1. As to the Hollingsworth Estate

 In a diversity case, a district court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution. *Whitaker v. Amer. Tele., Inc.*, 261 F.3d 196, 208 (2d Cir.2001). As such, the Court must look to New York's personal jurisdiction statutes, namely CPLR §§ 301 and 302, to determine whether the plaintiffs have made a *prima facie* showing of personal jurisdiction over the Hollingsworth Estate.

### a. CPLR § 301

 Section 301 provides "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. § 301 (McKinney 2002). Section 301 "was intended to codify the traditional common law bases of personal jurisdiction such as presence, consent, domicile, and 'doing business.' " *Goldenberg v. Lee*, No. 97–5297, 1999 WL 390611, *2 (E.D.N.Y. Apr. 15, 1999).

The Rasor Affidavit states that Hollingsworth resided in South Carolina his entire life, that he owned property there and traveled to New York only a handful of times in the last forty years before his death. Rasor Affidavit ¶ 4. Accordingly, personal jurisdiction in New York cannot be based on the presence, the consent or the domicile of Hollingsworth.

 As to "doing business" under Section 301, this basis has been used tradition-ally for securing personal jurisdiction over foreign corporations. *Goldenberg*, 1999 WL 390611 at *2. However, the New York Court of Appeals has not yet decided whether this basis applies an individual. *Id.* Regardless of whether "doing business" may be applied to an individual, the plaintiffs have failed to demonstrate that either Hollingsworth or his corporation, namely John D. Hollingsworth on Wheels, Inc. ("HOW") was "doing business" in New York.

 To prove that a defendant is "doing business" under Section 301, a plaintiff must show that the defendant's "continuous and systematic course of 'doing business' [in New York] ... warrant a finding of its 'presence' in the jurisdiction." *Ball v. Metallurgie Hoboken–Overpelt*, 902 F.2d 194, 198 (2d Cir.1990) (internal quotations and citation omitted).

The Rasor Affidavit states that HOW has always been located in South Carolina and Hollingsworth did not have any regular or even incidental contact with New York. Rasor Affidavit ¶ 4. The plaintiffs have not made a *prima facie* showing to the contrary. Accordingly, the Court concludes that the plaintiffs have not established personal jurisdiction under Section 301.

### b. CPLR § 302

 Section 302 provides long-arm jurisdiction in New York. Section 302(a)(1) sets forth a two-prong test for determining personal jurisdiction. In particular, a court may exercise personal jurisdiction over any non-domiciliary "who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state," but only "[a]s to a cause of action arising from" the transaction in question. N.Y. C.P.L.R. § 302(a)(1) (McKinney

2002). In other words, a plaintiff who seeks to rely on Section 302(a)(1) must show that (1) the defendant supplied goods or services in the state and (2) the cause of action arises from that transaction.

Here, the plaintiffs' action against the Hollingsworth Estate arises from Hollingsworth's business dealings in Germany, not in New York. Accordingly, Section 302(a)(1) does not provide a basis for personal jurisdiction. Sections 302(a)(2) and (4) are also not applicable because the plaintiffs' action does not arise from a tortious act committed in New York or relate to property located in New York. The Court now turns to the final basis for long-arm jurisdiction.

 Section 302(a)(3) requires (1) a tortious act committed outside the state; (2) an injury to the plaintiff within the state; and (3) either (a) the defendant regularly does business in or derives substantial revenue from New York or (b) the consequences of the defendant's activities in New York were foreseeable and the defendant derives substantial revenue from interstate or international commerce. N.Y. C.P.L.R. § 302(a)(3) (McKinney 2002).

 The first element is met because the plaintiffs allege that Hollingsworth conspired with the German Government when he purchased a factory in Germany. However, neither the second nor the third element are met. In particular, with regard to the second element, the plaintiffs' injury did not occur within the state. New York courts "have uniformly held that the situs of a non-physical commercial injury is where the critical events associated with the dispute took place." *Jaisan v. Sullivan,* No. 96–4336, 1997 WL 86402, *5 (S.D.N.Y. Feb. 28, 1997) (internal quotations and citation omitted). In addition, the occurrence of financial consequences in New York as a result of the fortuitous location of plaintiffs in New York is an insufficient ground under Section 302(a)(3) where the underlying events took place outside New York. *Id.*

It is undisputed that the critical events associated with the dispute took place in Germany. Specifically, the factories alleged conveyed to J. Shakour were located in Germany; the GDR expropriated the factories in the former East Germany; Hollingsworth purchased the factory at issue in Germany; and the alleged conspiracy to deprive the plaintiffs of their rights to the factories occurred in Germany.

Accordingly, the Court finds that the alleged injury took place in Germany, not in New York. *See Jaisan,* 1997 WL 86402 at *5 (finding that the alleged injury occurred outside New York when the shares of the defendants' inheritance were located in Arizona, the devisor resided in New Mexico and the New Mexico courts distributed the inherited assets); *Chemical Bank v. World Hockey Ass'n,* 403 F.Supp. 1374, 1380 (S.D.N.Y.1975) (finding that the injury resulting from the alleged conversion occurred in Maryland and New Jersey where defendants' acts respecting the property were committed even though the plaintiff's alleged injury to security interest was located in New York).

Finally, the third element is not met because the plaintiffs have failed to allege that Hollingsworth regularly conducted business in or derived substantial revenue from New York or the consequences of Hollingsworth's activities in Germany had foreseeable consequences in New York and that Hollingsworth derived substantial revenue from interstate or international commerce. Accordingly, the Court does not have long-arm jurisdiction over the Hollingsworth Estate. Therefore, the Hollingsworth Estate's motion to dismiss the

amended complaint for lack of personal jurisdiction is granted.

## III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED**, that, *sua sponte*, the action against Germany is dismissed for lack of subject matter jurisdiction; and it is further

**ORDERED**, that the motion of the Hollingsworth Estate to dismiss the amended complaint based on lack of personal jurisdiction is granted; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED**.