[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 22, 2003
THOMAS  K. KAHN
CLERK

_____

No. 03-10849
Non-Argument Calendar
_____

D.C. Docket No. 00-09050-CV-DTKH

MIRZA SHAMIM AHMED BEG,

Plaintiff-Appellant,

versus

ISLAMIC REPUBLIC OF PAKISTAN,
PAKISTAN ARMY, THE
GOVERNMENT OF PUNJAB

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 22, 2003)**

Before BARKETT, HULL and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

This case involves the issue of whether a foreign government's expropriation of property and subsequent failure to compensate for the expropriation falls under the commercial activity exception to the Foreign Sovereign Immunities Act. See 28 U.S.C. § 1605(a)(2). The district court found that the commercial activities exception did not apply. We affirm.

I. Background

Mirza Shamim Ahmed Beg filed suit against the Government of Pakistan, the Pakistan Army, and the regional Government of Punjab concerning the expropriation of land in Pakistan. In his complaint, Beg alleges that he owned eleven and one-half acres in the Punjab region of Pakistan valued at $10 million, which were expropriated from him by the Pakistani government. Beg states that the property was then used for military housing or otherwise transferred to members of the military. Later, the Government of Punjab sent a representative to the United States and offered Beg an alternative parcel of land. Beg alleges that the exchange was accepted by the Lahore High Court but rejected by the Supreme Court of Pakistan. The latter court determined the Government of Punjab did not have good title to the second property and refused to recognize Beg's title but invited him to pursue further legal remedies in regard to the original parcel. Beg claims to have abandoned any further litigation

2

in Pakistan, and, instead, has decided to seek monetary compensation in United States federal court.

The district court dismissed on the ground that the court lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, et seq. The district court found that the suit did not fall under the statute's exception to foreign government immunity for commercial activity, 28 U.S.C. § 1605(a)(2), because Pakistan had not engaged in any commercial activity and because the actions at issue did not result in a direct effect in the United States. Beg, now proceeding *pro se*, appeals.

## II.  Standard of Review

We review issues of jurisdiction *de novo*. See Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1285 (11th Cir. 2001).

## III.  Discussion

Federal courts have jurisdiction to hear claims against foreign governments only if authorized by the Foreign Sovereign Immunities Act ("FSIA"). See Republic of Argentina v. Weltover, 504 U.S. 607, 611 (1992) (stating that "[t]he FSIA thus provides the 'sole basis' for obtaining jurisdiction over a foreign sovereign in the

United States.") (citation omitted). The FSIA roughly codifies the "restrictive theory" of sovereign immunity, which grants foreign governments immunity for their public acts but not their private, commercial acts. See Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 486-89 (1983). The FSIA is structured as a general grant of immunity for foreign governments and their agents, 28 U.S.C. § 1604, unless the foreign government activity is subject to a specific exception. See Verlinden, 461 U.S. at 488.

The most prominent exception, and the one at issue here, is the "commercial activities exception," 28 U.S.C. § 1605(a)(2). The exception provides:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case–

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; *or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States*;

(emphasis added). On appeal, Beg relies exclusively on this exception's third clause, which requires that an act (1) takes place outside of the United States, (2) is

4

connected with a commercial activity, and (3) causes a direct effect in the United States.

Beg argues that the expropriation falls within this exception because (1) it took place in Pakistan, (2) the regional government did not have good title to the alternate property that was offered to him, and (3) he has suffered a financial loss that has a direct effect within the United States.

The key issue we address is whether the Pakistani government was engaged in commercial activity. The touchstone for determining if a foreign government's act is commercial is whether the *nature* of the act is public or private. See Weltover, 504 U.S. at 614-16. The Supreme Court defined commercial acts as those in which the state engages in transactions as a private party would. See id. Public acts, however, require sovereign power and thus cannot be performed by a private party. See id. The Court emphasized that public acts must make use of the state's sovereign authority:

> [W]e conclude that when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are "commercial" within the meaning of the FSIA …. [T]he issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in "trade and traffic or commerce." Thus, a foreign government's issuance of regulations limiting foreign currency exchange is a sovereign activity, because such authoritative control of commerce cannot be exercised by a private party; whereas a contract to buy army boots or even bullets is a "commercial" activity, because

5

private companies can similarly use sales contracts to acquire goods. Id. at 614 (citations omitted).

A government's act is thus commercial if it is the type of transaction that private actors could complete. For instance, in Weltover, the Court determined that Argentina's issuance of bonds to finance a currency-exchange program was a commercial activity because private corporations could raise capital through the issuance of debt instruments in the same manner. Id. at 616. Similarly, this court determined that the Government of Yemen engaged in commercial activity when it entered into a contract to purchase grain from an American corporation because the contract was "just a contract and . . . not based upon regulatory reasons." S & Davis Int'l v. Republic of Yemen, 218 F.3d 1292, 1303 (11th Cir. 2000).

By contrast, a government's regulation of the market, use of police power, or other activities requiring state authority are not commercial. See Saudi Arabia v. Nelson, 507 U.S. 349, 359-63 (1993); see also Weltover, 504 U.S. at 614 (finding that the regulation of foreign exchange policy would be a sovereign activity). In Nelson, the Supreme Court found that the alleged detention and torture by Saudi police of an American citizen, who had entered into an employment contract with a state hospital, was not commercial activity. See 507 U.S. at 361-62. The alleged tortious activity was pursuant to the state's police power and was "not the sort of action by which private parties can engage in commerce." Id. at 362. Although the plaintiff claimed

6

that the Saudi government's actions were similar to those of a private actor because the government had entered into an employment contract with him, the Court determined that the basis of the claim was the tortious conduct by government agents, not the employment contract. See id. at 361-63. Consequently, foreign government acts, "however monstrous," that are "peculiarly sovereign in nature" are not subject to review by our courts under the FSIA's commercial activities exception. Id. at 361.

Here, we conclude that the Pakistani government's actions involve the power of eminent domain and, therefore, are not commercial. The power of eminent domain is a sovereign power. See United States v. Carmack, 329 U.S. 230, 236-37 (1946) (stating that "[t]he power of eminent domain is essential to a sovereign government"). Confiscation of real property is a public act because private actors are not allowed to engage in "takings" in the manner that governments are. See Shakour v. Fed. Republic of Germany, 199 F. Supp. 2d 8, 13 (E.D.N.Y. 2002) (finding that the German Democratic Republic's expropriation of three factories is a public, not a commercial act); see also Haven v. Polska, 215 F.3d 727, 736 (7th Cir. 2000) (determining that the commercial activity exception did not apply to expropriation of real property in Poland because it was not based upon any commercial activity within the United States); but see Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 708-11 (9th Cir. 1992) (finding that the Argentinian government's expropriation

7

of a hotel was commercial when the government generated revenue from American tourists and paid for advertising in the United States).[1]  Consequently, the Pakistani government's actions do not fall under the commercial exception to the FSIA.[2]

---

[1] Our divergence with the Ninth Circuit is very narrow.  We disagree only with that court's determination that an expropriation "may" fall within the FSIA's third clause, which addresses foreign government activity outside of the United States.  See Siderman de Blake, 965 F.2d at 708.  In Siderman de Blake, the plaintiffs alleged that the Argentinian government had expropriated a hotel from the Siderman family and tortured Jose Siderman, an Argentinian national, because the family was Jewish.  Id. at 703.  The Argentinian government continued to operate the property, generated revenue from American tourists, and advertised the hotel in the United States.  The Ninth Circuit found that this commercial activity was sufficient to bring the Sidermans' claim under the first and second clauses of the FSIA's exception for commercial acts or acts "related to commercial activity" that take place *within* the United States.  Id. at 708-09.  The first and second clauses are not relevant here and, therefore, we have no issue with this analysis.

Our disagreement is with the Ninth Circuit's holding that the activity "may also fall within the third [clause]."  Id. at 708.  That court determined that the expropriation was commercial activity of the foreign state outside of the United States because the Argentinian government continued to operate the hotel for profit.   Id.  The Ninth Circuit focused on what the government did with property *after* the expropriation, not whether the government was acting like a private person in the marketplace at the time of the expropriation.  Id. at 708-10.

We decline to examine the government's motives in determining what is commercial activity.  In Weltover, decided less than a month after Siderman de Blake, the Supreme Court stated that the *nature* of the act, not the purpose or motive, is dispositive in classifying a government act as commercial.  504 U.S. at 614-15.  Specifically, the Court explained that "the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives.  Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'"  Id. at 614.  Here the government actions were not those of private party engaged in commerce. Applying Weltover, we conclude that the government's actions were not commercial and, therefore, are immune from suit in this nation's courts.

[2] The district court relied primarily on Garb v. Republic of Poland, 207 F. Supp. 2d 16 (E.D.N.Y. 2002), for the proposition that government expropriation of property, even if subsequently resold commercially, was not commercial activity subject to federal court review under the FSIA.  The Second Circuit, in an unpublished opinion, has since vacated and remanded Garb to reconsider whether the FSIA applies retroactively to World War II takings.  See Garb v. Republic of Poland, 2003 WL 21890843, *2 (2d Cir. 2003).  Retroactive application of the FSIA is not an issue here.  Beg bases his commercial activity claim on the expropriation of the replacement property to which he only claims title since December 1990.  The FSIA came into effect in January 1977 and would

8

Determining whether or how to compensate property owners for takings is also a sovereign function, not a market transaction. See Carmack, 329 U.S. at 236-37. The Supreme Court specifically noted that expropriation does not take place in a free-market setting:

> The power of eminent domain is essential to a sovereign government. If the United States has determined its need for certain land for a public use that is within its federal sovereign powers, it must have the right to appropriate that land. Otherwise, the owner of the land, by refusing to sell it or by consenting to do so only at an unreasonably high price, is enabled to subordinate the constitutional powers of Congress to his personal will. The Fifth Amendment, in turn, provides him with important protection against abuse of the power of eminent domain by the Federal Government.

Id. Although the Pakistani government allegedly failed to provide Beg with the alternative property, the *nature* of the foreign government's act is public and not commercial.

Beg contends that the Punjabi regional government's agreement to compensate him is the equivalent of a contract and, therefore, is commercial activity. This analogy is not persuasive. First, as the Supreme Court made clear in Weltover, the dispositive issue in determining whether an activity is commercial is whether private actors could undertake this type of activity in a market. See Weltover, 504 U.S. at

govern this event. See Jackson v. People's Republic of China, 794 F.2d 1490, 1499 (11th Cir. 1986) (finding that the FSIA's exceptions to foreign sovereign immunity apply after 1977 but should not be applied retroactively to pre-1952 events).

614. Expropriation is neither the type of activity in which private actors engage nor is it a market transaction. See Carmack, 329 U.S. at 236-37. Second, the FSIA has a separate exception for certain foreign government expropriations, further indicating that a foreign government's use of its eminent domain power is not commercial activity.[3]

Because we conclude that the defendants did not engage in commercial activity, this suit does not fall under the § 1605(a)(2) exception to foreign government immunity. The federal courts thus lack subject matter jurisdiction under the FSIA. Accordingly, we affirm the dismissal by the district court.


AFFIRMED.

---

[3] The FSIA has a distinct jurisdictional exception for some types of expropriation performed in violation of international law. See 28 U.S.C. § 1605(a)(3). It grants subject matter jurisdiction over suits

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

Id. International law prohibits expropriation of alien property without compensation, but does not prohibit governments from expropriating property from their own nationals without compensation. See Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1294 (11th Cir. 2001) ("[W]hen a foreign nation confiscates the property of its own nationals, it does not implicate principles of international law."). The district court found that Beg was born in Pakistan, although Beg has since become a naturalized American citizen.

In an earlier action, Beg asserted jurisdiction under this exception. That suit was dismissed by the district court. Beg did not appeal that dismissal, so we do not discuss that claim, including when Beg became an American citizen.