[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14171
Non-Argument Calendar

_____

D. C. Docket No. 1:10-cv-22097-PCH


GENOVEVA MARIA LUISA OCAMPO
CATALDI LOZA SANTIVANEZ, an individual,
MARCEL FRANCISCO LEON OCAMPO
CATALDI LOZA SANTIVANEZ, an individual,

Plaintiffs-Appellants,


versus


ESTADO PLURINACIONAL DE BOLIVIA,
f.k.a. La Republica de Bolivia,
PRESIDENCIA DEL ESTADO PLURINACIONAL,
f.k.a. Presidencia de La Republica de Bolivia,  et al.

Defendants-Appellees.


_____

Appeal from the United States District Court
For the Southern District of Florida

_____

(March 11, 2013)

Before MARTIN, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

Appellants Genoveva and Marcel Loza appeal the district court's dismissal of their case for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1605.  No reversible error has been shown; we affirm.

The Lozas filed suit in the district court seeking damages for the alleged wrongful taking, without just compensation, of real property by the Bolivian government.  The Lozas -- who are both citizens of the United States -- are the lawful heirs of Francisco Enrique Loza, a Bolivian national and landowner.

Beginning in 1954, the Bolivian government began expropriating land from Francisco Loza for government-related projects.  At least one of those expropriations directed that Francisco Loza receive compensation in exchange for his land.  Francisco received some compensation for some land, but the Bolivian government has never paid the full amount promised.

In 1961, the Bolivian government issued an executive order expropriating a portion of Francisco Loza's land for the construction of an international airport.  Although the executive order required that the expropriation be performed in

2

compliance with Bolivian law -- which required full and just compensation in exchange for all expropriated land -- Francisco Loza received no payment.

Francisco Loza died in 1989; and the Lozas -- Plaintiffs here -- were declared the rightful heirs of Francisco Loza's estate, which included his interest in the expropriated lands.

In 1993, the Bolivian government allegedly published a series of resolutions acknowledging that the Loza family was entitled to full and just compensation for the land that had been expropriated from Francisco Loza to build the airport. These resolutions appraised the value of the expropriated land and ordered the Bolivian government to compensate the Loza family.  Despite these resolutions and despite repeated requests to the Bolivian government, the Loza family remains unpaid.  According to the Lozas, the expropriated land is now worth over $250 million.

The district court sua sponte dismissed the Lozas' complaint for lack of subject matter jurisdiction.  We review jurisdictional questions de novo.  Beg v. Islamic Republic of Pakistan, et al., 353 F.3d 1323, 1324 (11th Cir. 2003).

Foreign countries are presumptively immune from suit in United States federal courts.  S & Davis Int'l, Inc. v. Yemen, 218 F.3d 1292, 1300 (11th Cir. 2000).  To overcome that presumption, a plaintiff must prove that his claim falls within one of the exceptions established by the FSIA.  Id.

3

The Lozas contend that their claims fall within the FSIA's "takings exception," set forth in 28 U.S.C. § 1605(a)(3).[*] The "takings exception" provides for subject matter jurisdiction over cases

> in which rights in property taken in violation of international law are in issue and . . . that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3).

Even if the taking complained of in this case violated local Bolivian law, it did not violate international law as required by section 1605(a)(3). Except for some exceptions inapplicable here, "when a foreign nation confiscates the property of its own nationals, it does not implicate principles of international law." Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1294 (11th Cir. 2001). This point is decisive for us: because the Bolivian government expropriated land owned by Francisco Loza -- a Bolivian national -- no violation of international law occurred.

But the Plaintiff Lozas argue that the Bolivian government's continued refusal to pay full and just compensation after the 1993 resolutions constituted a renewed taking. And -- because the Plaintiff Lozas are citizens of the United States -- they contend that this post-1993 so-called "taking" violated international law.

---

[*] In their appellate brief, the Lozas abandoned expressly the argument that their complaint also falls within the FSIA's "commercial activity exception," 28 U.S.C. § 1605(a)(2).

The Lozas rely on two cases from other circuits which both involved a "retaking" of property: Altmann v. Republic of Austria, 317 F.3d 954 (9th Cir. 2002), and Agudas Chasidei Chabad of United States v. Russian Fed'n, et al., 528 F.3d 934 (D.C. Cir. 2008).  In both cases, a foreign government seized valuable personal property belonging to Jewish citizens, with no promise of compensation. Altmann, 317 F.3d at 959; Agudas Chasidei Chabad, 528 F.3d at 938.  Many years later, the governments ordered the property returned to the original owners, but the actual entities in possession of the property refused to return it.  Altmann, 317 F.3d at 960; Agudas Chasidei Chabad, 528 F.3d at 944-45.  In Altmann, the victim family was coerced into "donating" six paintings in exchange for receiving other pieces of artwork stolen from the family.  317 F.3d at 960.  In Agudas Chasidei Chabad, the government library in possession of the stolen religious books, manuscripts, and documents threatened plaintiff with violence.  528 F.3d at 945. Briefly stated, each taking government then took some affirmative act to reassert -- beyond the initial taking -- ownership over the property again, at a time when the property was arguably the property of persons who were citizens of countries other than the taking country.  Altmann, 317 F.3d at 961; Agudas Chasidei Chabad, 528 F.3d at 945-46.

This case is different.  According to the Lozas' complaint, the Bolivian government -- when it expropriated Francisco Loza's land -- acknowledged that he

(a Bolivian) was entitled to full and just compensation, consistent with Bolivian law. The Bolivian government later issued official resolutions confirming its original position. Unlike the governments in Altmann and Agudas Chasidei Chabad, the Bolivian government has at no time taken official action to return ownership of the pertinent property to the Loza family or even officially to declare the Loza family unentitled to just compensation. Although the Lozas have been unsuccessful at enforcing government resolutions for compensation, they have not shown that the Bolivian government's continued failure to pay just compensation for the taking of land from Francisco constituted a second taking: a taking from citizens not of Bolivia and, thus, arguably in violation of international law.

Because the Lozas fail to show that their claims fell within the FSIA's "takings exception," the district court lacked subject matter jurisdiction to review the complaint. See S & Davis Int'l, Inc., 218 F.3d at 1300.

AFFIRMED.

6