[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11656
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-25052-JEM


HORACIO SEQUEIRA,
a citizen of the United States of America,

                                                            Plaintiff-Appellant,


versus


THE REPUBLIC OF NICARAGUA,
a foreign country,
CITY OF CHINANDEGA,
a political subdivision of the foreign Country of the
Republic of Nicaragua,
EDUARDO JOSE CALLEJAS CALLEJAS,
an individual citizen of the United States of America,
ESTRELLITA DEL CARMEN TROZ MARTINEZ,
an Individual Chief Public Records of Chinandega, Nicaragua,
CHIEF OF PUBLIC RECORDS OF CHINANDEGA, NICARAGUA,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 14, 2020)

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

Horacio Sequeira appeals *pro se* the District Court's order dismissing his action against the Republic of Nicaragua, the City of Chinandega, Eduardo Jose Callejas Callejas, and Estrellita Del Carmen Troz Martinez ("Troz") for lack of subject matter jurisdiction. The Foreign Sovereign Immunities Act ("FSIA") "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 393 (2015) (quotation marks omitted). "Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies." *Permanent Mission of India to the U.N. v. City of N.Y.*, 551 U.S. 193, 197, 127 S. Ct. 2352, 2355 (2007). The District Court determined that sovereign immunity barred suit against Nicaragua and Chinandega and dismissed Sequeira's amended complaint against those parties. In addition, because both Callejas and Sequeira are residents of Florida, the Court dismissed the action for lack of complete diversity.

2

In broad strokes, Sequeira alleged that Nicaragua and Chinandega contracted with Callejas, who in turn contracted with Sequeria, to illegally take Sequeria's farmland in Nicaragua and sell the livestock as meat products in the United States. Sequeira also sued Troz, the Chief of Public Records in Chinandega, for her participation in this alleged scheme.

On appeal, Sequeira alleges that Nicaragua and Chinandega are subject to suit in the United States because the purported contract they had with Callejas included an arbitration provision, thus waiving their sovereign immunity. He first contends that the District Court erred in concluding the contract was inauthentic as it assessed evidence at the motion-to-dismiss stage instead of weighing the evidence in the light most favorable to him. In addition, Sequeira argues that the District Court erred when it found that Nicaragua and Chinandega were not subject to suit based on either the commercial-activity exception or the expropriation exception to the FSIA. Sequeira also contends that the District Court erred when it found that, absent FSIA jurisdiction, there could be no subject matter jurisdiction over Callejas and Troz due to a lack of complete diversity among the parties. Finally, Sequeira argues that the magistrate judge abused his discretion in denying Sequeira's request for jurisdictional discovery.

We affirm.

**I.**

3

Sequeira originally filed suit in 2016, alleging that Appellees had breached a contract, illegally took his farmland in Nicaragua, and illegally sold his livestock as meat products.  In the complaint, Sequeira alleged that "Nicaragua through its political subdivision of Chinandega waived its sovereign immunity by entering into a private contract with the defendant Eduardo Jose Callejas Callejas."  The complaint alleged that Sequeira and Callejas are both domiciled in Florida and that Troz, the Chief of Public Records in Chinandega, is a resident of Nicaragua.

The District Court dismissed the complaint for lack of subject matter jurisdiction because there were no allegations that a contract existed between Nicaragua and Sequeira.  Furthermore, the Court concluded that it lacked subject matter jurisdiction over Sequeira's other claims because the parties were not completely diverse.

Sequeira moved for leave to amend his complaint.  In his motion, Sequeira included a translated declaration from Mariano Guerra Morales ("Guerra") who purported to be the Executive Director of the Cattle Raising Program under the Nicaraguan Rural Development Institute ("IDR").  Guerra's declaration claimed that in 2001 or 2002, Nicaragua, through the IDR, entered a contract with Sequeira and others to raise livestock at the El Pital farm.  Sequeira did not provide a copy of the contract.  He did provide a copy of a rental agreement between himself and

Callejas, which references an agreement between Sequeira, Nicaragua, and the IDR. The District Court granted Sequeira's motion for leave to amend.

In his amended complaint, Sequeira alleges that Nicaragua waived its sovereign immunity because the IDR contract included an arbitration provision, and that, therefore, the District Court has subject matter jurisdiction. He also alleges that the Appellees engaged in commercial activities in the United States, including selling meat products in the United States, retaining and paying American attorneys, paying the salary of "front men" located in the United States, and because Callejas paid rent from Florida. Sequeira alleges that Troz and Callejas acted on behalf of Nicaragua and Chinandega to illegally take his property.

The Appellees moved to dismiss. Callejas moved to dismiss each claim as being barred by the statute of limitations. Nicaragua, Chinandega and Troz moved to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, failure of service of process, improper venue, and failure to state a claim. In their motion to dismiss, Nicaragua and Chinandega submitted several declarations. Notably, they submitted a declaration from Miguel Angel Baca Jimenez, a legal advisor for the IDR record keeping organization, who found no record of any contract between Sequeira and the IDR.

Sequeira moved for limited jurisdictional discovery, seeking to subpoena documents held by the Defendants' attorneys in Washington, inspect records in Nicaragua, and request admissions from six individuals regarding Appellees' commercial activities in the United States.  The District Court denied the motion, concluding that sovereign-immunity interests outweighed Sequeira's vague and improper requests for discovery.

In his response to the motions to dismiss, Sequeira repeated his jurisdictional arguments and submitted a translation of a purported modification to his alleged contract with the IDR.  He did not submit a copy of the original contract, nor did he submit a copy of the original modification.

Thereafter, the Court dismissed Sequeira's amended complaint, finding that it lacked subject matter jurisdiction.  Sequeira appeals.

## II.

A plaintiff who seeks to sue a foreign state has the burden of establishing subject matter jurisdiction by "producing evidence" that one of the FSIA's sovereign-immunity exceptions applies.  *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312–13 (11th Cir. 2009).  A district court determines whether a plaintiff has satisfied this burden by examining the allegations in the complaint and any undisputed facts that the parties submit.  *Id.* at 1313.  If the plaintiff satisfies this

6

burden, the foreign state then has the burden of proving by a preponderance of the evidence that the exception cited by the plaintiff does not apply. *Id.*

We review a district court's determination that it lacks subject matter jurisdiction under the FSIA *de novo* and its factual findings for clear error. *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1287 (11th Cir. 2005). We consider a factual finding clearly erroneous when we are left with a "definite and firm conviction that a mistake has been committed" after reviewing all the evidence. *U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities*, LLC, 749 F.3d 967, 974 (11th Cir. 2014) (quotation marks omitted). We will not consider a factual finding clearly erroneous if it is plausible based on the record viewed in its entirety. *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). We will not consider a factual finding clearly erroneous if it is based on one of two permissible views of the evidence. *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1186 (11th Cir. 2009).

## III.

### A.

Sequeira claims that the arbitration provision in the purported contract between the IDR, Callejas, and him impliedly waived Nicaragua's, and thus

Chinandega's, sovereign immunity.[1]  The District Court determined that the purported contract was not authentic.  It also concluded that the signatory of the purported contract lacked the authority to waive Nicaragua's and Chinandega's sovereign immunities.  Sequeira contends that the District Court improperly weighed the evidence in favor of the Appellees.  We conclude that the District Court did not clearly err in determining that the contract was inauthentic.

The Appellees challenged the authenticity of the contract, mounting a factual attack on Sequeira's allegations of waiver.  In cases involving a factual attack on subject matter jurisdiction, the district court "is free to independently weigh facts" and resolve the jurisdictional issue on the merits, even when there are disputed material facts.  *Morrison v. Amway Corp.*, 323 F.3d 920, 924–25 (11th Cir. 2003) (contrasting the standard of review used for factual attacks on subject matter jurisdiction with the standard applied to summary judgment motions).  This means that a district court may go beyond the four corners of a complaint when determining whether subject matter jurisdiction exists under the FSIA.  *See Comparelli v. Republica Bolivariana De Venez.*, 891 F.3d 1311, 1322 (11th Cir. 2018).

---

[1] A foreign state can impliedly waive its sovereign immunity when it (1) agrees to arbitration in another country, (2) agrees that the law of a particular country should govern the contract, or (3) files a responsive pleading without raising sovereign immunity as a defense.  *Calzadilla*, 413 F.3d at 1287.

8

The District Court did not err when it determined that the contract was inauthentic.  The District Court's conclusion that the submitted document "appears to be a sham contract created by Plaintiff for the purpose of defeating dismissal of his complaint" is more than plausible.  As the District Court noted, the timing of Sequeira's submission was highly suspect; it was only after the Court pointed out that there could be no waiver without an agreement and after Sequeira requested— and was denied—discovery to find the contract that a copy of the agreement "magically appeared" in his possession.  In addition, the content of the agreement raises suspicion.  The record supports the District Court's conclusion that "specific details believed to satisfy exceptions under the FSIA or to prevent dismissal were haphazardly compiled to form a contract."  The translated modification includes suspicious "Insertion of an Arbitration Clause" language and references an amendment that is not otherwise mentioned.[2]  The purported agreement also mandated arbitration under CAFTA or a "Federal Court in Miami Florida" but failed to specify what law applies or what happens when the parties do not agree. The District Court also found it suspicious that the agreement included a provision that subsequent agreements need not be notarized considering the circumstances

---

[2] The District Court also found that it was "*highly* suspect that Guerra makes no mention of the 2005 amendment in his purported declaration." (emphasis in original).

surrounding a similar lawsuit by Sequeira's brother in a different court.[3]  We also note that the substance of the agreement is questionable.  The agreement lacks clear terms and does not explain why a Nicaraguan-based–cattle-raising arrangement provided for exclusive distribution to Miami.

Given the record, the District Court did not clearly err in finding that the contract was inauthentic and, consequently, that Nicaragua and Chinandega did not waive their sovereign immunities.

**B.**

The District Court also did not err in concluding that the commercial-activity exception did not apply.  The FSIA provides that a foreign state is not entitled to sovereign immunity in any case that is

> based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

---

[3] Specifically, the Magistrate Judge found that the provision "appears to be in response to the California federal court's finding in Jairo Sequeira's case that the contract submitted was void under Nicaraguan law because it was notarized by Jairo's brother, the Plaintiff here.  The Undersigned also finds it suspicious that Plaintiff was the notary for the contract submitted by his brother, which was found to be void." *See Sequeira v. Republic of Nicaragua*, No. CV13-4332, 2018 WL 6267835, at *5 (C.D. Cal. Aug. 24, 2018), *aff'd*, 791 F. App'x 681 (9th Cir. 2020).

28 U.S.C. § 1605(a)(2).  A foreign state engages in commercial activity when it participates in a transaction as a private party would.  *Beg v. Islamic Republic of Pak.*, 353 F.3d 1323, 1325 (11th Cir. 2003).  Thus, "public acts," such as takings, are not considered commercial activities.  *See id.* at 1325–26.  In addition, for a suit to be "based on" commercial activity in the United States, the alleged commercial activity must be "the gravamen" of the plaintiff's complaint.  *OBB Personenverkehr*, 136 S. Ct. at 395 (quotation marks omitted).  In ascertaining the gravamen of a complaint, courts are to focus on the core conduct giving rise to the suit rather than individually analyzing the elements of each cause of action.  *Id.* at 396.  This approach prevents plaintiffs from side-stepping the FSIA's limitations "through artful pleading."  *Id.*

The commercial-activity exception does not apply here because Sequeira's amended complaint was based on the alleged taking of his land, which is not a commercial activity.  *See Beg*, 353 F.3d at 1326.  The other activities that allegedly occurred in the United States, such as selling meat and paying "front men," do not constitute the "gravamen" of Sequeira's complaint.  *See OBB Personenverkehr*, 136 S. Ct. at 395.

## C.

The FSIA provides that a foreign state is not entitled to sovereign immunity in a case where "rights in property taken in violation of international law are in

issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3).

"[A]n amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." *Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982). Thus, the allegations in an initial pleading are abandoned and "no longer a part of the pleader's averments" once an amended pleading has been filed. *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (quotation marks omitted).

Sequeira did not re-allege in his amended complaint that the expropriation exception applied. In addition, Sequeira never requested permission to add such an allegation to his amended complaint, even though he had ample time to do so. Therefore, the District Court did not err when it did not consider the expropriation exception because Sequeira did not properly raise the expropriation exception as a possible basis for subject matter jurisdiction.

## III.

Because the District Court did not have FSIA jurisdiction over Nicaragua and Chinandega, there was no basis for supplemental jurisdiction over the claims against Troz and Callejas. The District Court did not have an independent basis for

12

subject matter jurisdiction as to the claims against Troz and Callejas because those claims were based on state law and the parties lacked diverse citizenship. Thus, the District Court did not err in dismissing Sequeria's complaint.

## IV.

We review a district court's denial of jurisdictional discovery for abuse of discretion. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009). This standard provides a range of choice for the district court. *Alliant Tax Credit 31 v. Murphy*, 924 F.3d 1134, 1145 (11th Cir. 2019). Accordingly, when applying this standard, we will affirm unless we find that the district court made a clear error of judgment or applied the wrong legal standard. *GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1312 (11th Cir. 2017).

In determining whether jurisdictional discovery should be permitted against a foreign state, a district court is "to balance the need for discovery to substantiate exceptions to statutory foreign sovereign immunity against the need to protect a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *Butler*, 579 F.3d at 1314 (quotation marks omitted) (alteration adopted). This balancing test is designed to ensure that jurisdictional discovery is used only to confirm specific factual allegations and does not cause the undue burdens that foreign sovereign immunity is designed to prevent. *Id.*

Given the breadth and lack of detail involved in Sequeira's request for jurisdictional discovery, it was reasonable for the District Court to conclude that the request was not consistent with the permissible scope and purposes of jurisdictional discovery against a foreign state. Therefore, the District Court did not abuse its discretion in denying Sequeira's request.

## V.

Because Nicaragua, Chinandega, and Troz mounted a factual attack on Sequeira's stated bases for subject matter jurisdiction, the District Court was permitted to rule on the validity of the purported contract and was not required to weigh the evidence in the light most favorable to Sequeira. The District Court also appropriately determined that Sequeira had not demonstrated that another exception allowed for subject matter jurisdiction. The District Court also reasonably concluded that Sequeira's broad requests did not justify jurisdictional discovery. We affirm.

**AFFIRMED.**

14