[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 5, 2005
THOMAS K. KAHN
CLERK

_____

Nos. 03-15283 & 03-16297

_____

D. C. Docket No. 02-20118-CV-SH

SAMCO GLOBAL ARMS, INC.,

Plaintiff-Appellant,

versus

CARLOS ARITA,
in his official capacity as
Procurador General of the Republic of Honduras,
a foreign sovereign nation,
PROCURADURIA GENERAL DE LA REPUBLICA,
an agency or instrumentality of the
Republic of Honduras,
REPUBLIC OF HONDURAS,
a foreign sovereign nation,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(January 5, 2005)

Before BARKETT and HULL, Circuit Judges, and EDENFIELD*, District Judge.

_____
        * Honorable B. Avant Edenfield, United States District Judge for the Southern District of
Georgia, sitting by designation.

BARKETT, Circuit Judge:

Samco Global Arms, Inc. ("Samco"), a Florida-based arms dealer, appeals

the dismissal without prejudice of its complaint for breach of contract against

Carlos Arita, in his official capacity as the *Procurador General* of Honduras,[1] the

*Procuraduría General* of Honduras, an agency or instrumentality of the Republic

of Honduras, and the Republic of Honduras (collectively "Honduras").[2] The

district court found that the defendants were immune from suit under the Foreign

Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and that the

case was also barred by the Act of State doctrine. Prior to dismissal, the district

court denied Samco's requests for jurisdictional discovery and for an evidentiary

hearing on the jurisdictional question. This appeal followed. We affirm because

the FSIA precludes suit against Honduras under the allegations of this complaint.

---

[1] The Honduran *Procuraduria General* is the agency charged with the legal representation of the Republic of Honduras. It is headed by the *Procurador General*, a figure somewhat similar to the United States Attorney General.

[2] Although the district court order dismissed the case "without prejudice," it is clear that the order was nevertheless "final," as the district court found the defendants immune from all claims by Samco relating to the defendants' actions, and closed the case without granting the plaintiff permission to amend or refile. Accordingly, we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. See Grayson v. K Mart Corp., 79 F.3d 1086, 1094 (11th Cir. 1996) ("A dismissal 'without prejudice' refers to the fact that the dismissal is not on the merits, not whether the dismissal is final and appealable. See 9 Moore Federal Practice ¶ 110.13[1] n.30. Thus, although dismissals without prejudice may be appealable, Liberty Nat'l Ins. Holding Co. v. Charter Co., 734 F.2d 545, 553 n.18 (11th Cir.1984), they are only appealable if they are 'final orders.' Dismissals that are without prejudice to refiling are not 'final' for purposes of appeal.").

2

I

The FSIA provides the basis for obtaining jurisdiction over a foreign

sovereign in the United States. See 28 U.S.C. §§ 1330(a), (b).[3] However, 28

U.S.C. § 1604 grants to foreign sovereigns immunity from the jurisdiction of the

courts of the United States and of the states, with certain exceptions. Section

1605(a), the exception relevant to this case, states:

> A foreign state shall not be immune from the jurisdiction of courts of the
> United States or of the States in any case . . . (2) in which the action is based
> upon a commercial activity carried on in the United States by the foreign
> state; or upon an act performed in the United States in connection with a
> commercial activity of the foreign state elsewhere; or upon an act outside the
> territory of the United States in connection with a commercial activity of the
> foreign state elsewhere and that act causes a direct effect in the United
> States.

28 U.S.C. § 1605 (emphasis added). If a foreign state is immune under the FSIA,

courts of the United States lack both subject matter and personal jurisdiction in any

suit against it. Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 611 (1992).

Samco argues that Honduras is not immune under the FSIA because its

---

[3] In relevant part, § 1303 states:
(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

3

cause of action against Honduras is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. 1605(a)(2). To assess this claim, we turn to the facts alleged in the complaint.[4]

## II

The complaint alleges a breach of contract by Honduras. The 1985 contract referenced in the complaint (and attached as an exhibit) upon which this action is based was entered into by Honduras[5] and Longlac Enterprises Corporation ("Longlac"), a Panamanian corporation. The contract provided that Longlac would be permitted to import into Honduras an inventory of weapons, munitions, and explosives free of taxes and other fees. The weapons would be stored and safeguarded by the Honduran Armed Forces in a military facility. In return,

---

[4] We review a dismissal for lack of jurisdiction de novo. Beg v. Islamic Republic of Pakistan, 353 F.3d 1323, 1324 (11th Cir. 2003) (subject matter jurisdiction); Meier v. Sun Int'l. Hotels, Ltd., 288 F.3d. 1264, 1268 (11th Cir. 2002) (personal jurisdiction). We use the same standard as the district court in analyzing a facial attack on jurisdiction, and therefore accept the well-pleaded allegations of the complaint as true and limit our inquiry to the complaint and the documents attached thereto. See Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003) ("Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion.") (internal citations omitted).

The district court's conclusion as to whether the defendant enjoys sovereign immunity under the FSIA is a question of law that we review de novo. Venus Lines Agency v. CVG Industria Venezolana de Aluminio, C.A., 210 F.3d 1309, 1311 (11th Cir. 2000).

[5] The contracting party was technically the Honduran Armed Forces, an agency of the Honduran Government.

4

Honduras enjoyed the right of first refusal to purchase part or all of the inventory from Longlac. Arms not purchased by Honduras could be retrieved, sold and exported to non-communist countries by Longlac. If purchases were made by the Honduran Armed Forces, they would be governed by separate purchase and sale agreements to be negotiated by the parties. Between 1985, when Langloc delivered the inventory of arms to Honduras, and 1994, the arms were either purchased by the Honduran Armed Forces or re-exported by Longlac for outside sale. During that time, Longlac allegedly sold some of the inventory to Samco, in Miami, Florida.

Following a turnover in power in Honduras in 1994, the contracting parties' relationship deteriorated. Domestic criminal charges were brought against the Honduran Armed Forces asserting illegal trafficking with regard to the arms owned by Longlac. The Honduran criminal court ultimately found no criminal misconduct and issued a ruling on February 15, 2000, returning control of the arms to their "rightful owner."[6] However, an attorney's lien was subsequently imposed by the Honduran courts on the arms in June of 2000. The lien, which amounts to approximately one-tenth of the worth of the arms, was obtained by Longlac's

---

[6] This decision was affirmed by the Honduran appellate court on March 24, 2000. The criminal court issued a final dismissal in the case on January 15, 2001, which was also affirmed by the appellate court, on June 7, 2001.

attorney for unpaid fees earned in connection with the criminal action and related services. The complaint alleges that in May of 2000, after nearly two years of failed attempts by Longlac to recover the arms, Longlac sold all of its rights and claims under the 1985 contract to Samco. A letter referencing the assignment is attached to the complaint, and states that Longlac is

> hereby confirming and accepting we have closed the sale of all our inventories in Honduras deposited with the [Armed Forces] under Contract of Bailment signed on July 19, 1986 to [Samco].[7] All the rights derived from this Contract must be observed by the original subscribers, accepting the purchaser all the obligations derived from the contract [. . . ]
>
> From this date, while a new General Power of Attorney is granted, it is established that once I communicate the sale in a legal way to the Army Force, Samco can be able to subscribe contracts and obligations of any nature in relation to the equipment, munitions and materials described in the contract dated July 19, 1986.

Letter of May 15, 2000, R. 1 at ex. C. Thus, accepting the allegations of the complaint as true, Samco now stands in the shoes of Longlac.

In its complaint, Samco asserts that the attachment of the arms during the pendency of the criminal charges against the Armed Forces and the imposition of an attorney's lien by the Honduran Courts as well as alleged damage to the arms while in storage during this time constituted a breach of the contract by the

---

[7] This appears to be a typographical error as the bailment contract is dated July 19, 1985, not July 19, 1986.

government of Honduras.  Accordingly, Samco seeks redress for this alleged breach of the 1985 contract, arguing that Honduras is not immune under the FSIA because, as noted earlier, its cause of action against Honduras is based upon the exception contained in 28 U.S.C. § 1605(a).

III

To determine whether § 1605(a) permits this suit against the Honduran government, we must determine whether: (1) the "act [of the foreign government] outside the territory of the United States"[8] was an act "in connection with a commercial activity of the foreign state" and (2) constituted an "act [that] causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).

We readily conclude that the 1985 contract constituted a commercial activity under the FSIA.  This Circuit has held that where the activity at issue involves a government's contract for purchase and sale of goods, the activity is commercial, and not sovereign.  See S & Davis Int'l, Inc. v. Republic of Yemen, 218 F.3d 1292, 1302-03 (11th Cir. 2000); see also Vermeulen v. Renault, USA, Inc., 985 F.2d 1534, 1544 (11th Cir. 1983) ("The sale of merchandise is a quintessential commercial activity.  In designing and manufacturing cars for sale, [the sovereign

---

[8]  The parties do not dispute that this action is based upon acts taken outside the United States.  Nor do they contest that Mr. Arita (in his official capacity) and the Procuraduria General qualify as "foreign state[s]" within the meaning of the FSIA.  See 28 U.S.C. § 1603.

7

defendant] acted not in any governmental capacity, but in the manner of a private player, no different from General Motors, Ford, or any other privately owned automobile manufacturer"); Practical Concepts, Inc. v. Republic of Bolivia, 811 F.2d 1543, 1549 (D.C. Cir. 1987) ("[A] contract between a foreign state and a private party for the purchase of goods or services may presumptively be, but is not inevitably, commercial activity.") (internal citations and quotation marks omitted).

This contract was essentially for the bailment of goods with a purchase option; it was predominantly "commercial in nature," and obviously could have been executed by individuals in the private marketplace. The mere fact that the military was involved in the storage and purchase of arms does not alone convert the activity into an exercise of sovereign power. See Weltover, 504 U.S. at 614-15 (noting that the fact that a government issued bonds did not convert the private nature of the activity: "a contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods").[9]

_____

[9] Other circuits have consistently held that contracts to supply the military with equipment and supplies are "commercial." Globe Nuclear Servs. & Supply, Ltd. v. AO Techsnabexport, 376 F.3d 282, 289 (4th Cir. 2004) (contract of Russian Federation to supply private company with uranium hexaflouride extracted from nuclear weapons was "commercial"); Ministry of Def. v. Cubic Def. Syst., Inc., 385 F.3d 1206, 1220 (9th Cir. 2004) (government engaged in "commercial activity" by contracting for sale and servicing of an Air Combat Maneuvering Range); McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 349 (8th Cir. 1985) (contract to supply Iran with military aircraft parts was a "commercial activity"). See also Virtual Def. & Dev. Int'l Inc. v. Republic of Moldova, 133 F.Supp.2d 1, 4

Notwithstanding the fact that the parties entered into a commercial contract, the district court held that the government's actions which allegedly constituted a breach of that contract were not acts "in connection with a commercial activity of the foreign state." The district court reasoned that the criminal court's seizure of the goods pending a criminal investigation or administrative proceeding and the attachment of the property to enforce an attorney's lien were acts that could only be undertaken by a sovereign, and not by private parties.

We need not reach the question of whether, under the facts presented, the actions of the Honduran criminal courts and the imposition of an attorney's lien constitute acts "in connection with a commercial activity of the foreign state," because, in any event, these acts have not caused "a direct effect in the United States," as is required by the FSIA. 28 U.S.C. § 1605(a)(2). Samco alleges that it suffered injuries in the United States as an "immediate consequence" of the defendants' breach of the bailment contract, including the inability to ship the arms to the United States, expenditures in attempting to have the armaments released, lost profits from future sales, and harm to its business reputation. We agree with the conclusion of the district court that Samco's alleged U.S.-based injuries are too

(D.D.C. 1999) (contract for sale of MiG-29 fighters was commercial activity for purposes of FSIA).

indirect and speculative to constitute the "immediate consequences" of the defendants' alleged breach.[10]

First, the contract in this case requires that Honduras is only obliged to permit Longlac (and now Samco) to retrieve the arms in Honduras, if it does not choose to purchase any of the arms stored in its facility. The Honduran government has no obligation to purchase any arms from Samco. Nor does the contract provide for the re-exportation of the arms to the United States, or to any other location. Accordingly, we see no "immediate" consequence in the United States of the defendants' alleged refusal to release the arms in Honduras.

We find inapposite the cases cited by Samco in support of its position. In Weltover, the Supreme Court reasoned that the rescheduling of the Argentinian bonds to avoid repayment had a "direct effect" in the United States because payments were due in New York and thus, money "that was supposed to have been delivered to a New York bank for deposit was not forthcoming." 504 U.S. at 618.

Here, there was no similar arrangement – no monies or goods were due in the United States. For the same reason, this case is distinguishable from Harris Corp. v. Nat'l Iranian Radio and Television, 691 F.2d 1344, 1351 (11th Cir. 1982),

---

[10] In Weltover, in interpreting the relevant clause, the Supreme Court stated that "[a]n effect is direct if it follows as an immediate consequence of the defendant's activity." 504 U.S. at 618.

10

a pre-Weltover case, where we held that a demand for payment in the United States against an American bank may constitute a direct effect.[11] See also Texas Trading & Milling Corp. v. Fed. Republic of Nigeria, 647 F.2d 300, 312 (2d Cir. 1981) (company's financial loss occurred in the United States where breach of contract prevented American corporation from presenting documents and collecting money in the United States).

The contract in this case was between a Panamanian citizen and Honduras, was negotiated and executed in Honduras, involved goods manufactured outside the United States, required performance by Honduras only within its territory, and made no reference whatsoever to the United States. The only tie this case has to the United States is the plaintiff, a non-contracting party, who purchased the rights to the contract some 15 years after its execution, in a transaction in which the

---

[11] In Honduras Aircraft Registry Ltd. v. Gov't of Honduras, 129 F.3d 543, 549 (11th Cir. 1997), for example, we concluded that Honduras' abrogation of its technical assistance contract with two foreign-owned companies had "direct effects" in the United States, because the contract provided that

> the offices and registry database were to be established and maintained in Florida, computers and other equipment were to be purchased in the United States, plaintiffs had [representatives who could register the aircraft on behalf of the government] in Florida and had established a network of aircraft inspectors in the United States.

129 F.3d at 549. See also Vermeulen, 985 F.2d at 1545 (injuries suffered in the United States from a car accident were the "immediate consequence" of a French-owned car company's allegedly negligent design and manufacture of the passenger restraint system in cars distributed in the United States).

11

defendants played no part.

Given the total absence of any other contacts with the United States aside from the corporate personality of the assignee to the contract, we cannot find any act of the Honduran government that "cause[d] a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Thus, we find that the FSIA precludes this suit against Honduras.

## IV

Given our conclusion that the defendants are immune from suit under the FSIA, we need not reach the question of whether this suit is barred by the Act of State doctrine. Moreover, because the district court considered the motion to dismiss as a "facial" attack on jurisdiction (i.e., taking the facts as alleged in the complaint as true, despite disputes, and relying only on the complaint and the attached exhibits), it did not abuse its discretion in denying Samco's request for discovery on any alleged disputes of fact.

Accordingly, the district court's dismissal of the complaint for lack of jurisdiction is

AFFIRMED.