[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12234
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-21371-UU


ABSOLUTE TRADING CORP.,
d.b.a. Absolute Trading, Inc.,
f.k.a. Absolute International Trading, Corp.,

Plaintiff - Counter
Defendant - Appellant,

versus

BARIVEN S.A.,
an Agency or instrumentality of the
Venezuelan government,

Defendant - Counter
Claimant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(January 4, 2013)

Before CARNES, BARKETT, and MARTIN, Circuit Judges.

PER CURIAM:

Absolute Trading Company (Absolute) and Bariven, a wholly-owned subsidiary of the Venezuelan-owned Petroleos de Venezuela, S.A. (PDVSA), entered into a contract for Absolute to sell $123.5 million worth of powdered milk to Bariven. The contract provided that Absolute would deliver 26,000 metric tons of powdered milk from China to Venezuela in several shipments. This agreement was precipitated by widespread food shortages in Venezuela.

Absolute sent its first milk shipment to Venezuela in June 2008. Over the next few months, Absolute sent another eighteen shipments to Venezuela. In September 2008, when the first three shipments of Chinese milk had arrived in Venezuela and six more shipments were in transit, the Chinese government halted its dairy exports, announcing that some of its milk products were unsafe due to the presence of melamine.[1] In October 2008, China resumed production of powdered milk and Absolute delivered ten more milk shipments to Venezuela.

On September 19, 2008, after learning of the melamine contamination, Bariven asked Absolute if its milk was safe. Two days later, Absolute assured Bariven that the milk was harmless and provided test results from the Chinese government indicating that the milk was melamine-free. On September 24 and

---

[1] Melamine is a potentially lethal substance that is intentionally added to food to falsely increase the apparent level of protein.

October 8, 2008, Bariven collected twenty samples from the third milk shipment to conduct its own test for melamine.

In late March 2009, Bariven received laboratory results from the sampled milk and discovered that it was contaminated with high levels of melamine. Bariven promptly requested an urgent meeting with Absolute about the contaminated milk. At a meeting in April 2009, Bariven revoked acceptance of all shipments of the Chinese milk. After samples from shipments six and eight through nineteen were also found to contain dangerous levels of melamine, Bariven "formally confirm[ed]" to Absolute on July 9, 2009 that it was revoking acceptance of the milk because of the melamine contamination.

Absolute sued Bariven in district court, alleging, among other things, breach of contract for Bariven's revocation of the milk purchases. Bariven countersued, alleging, among other things, that Absolute breached the implied warranty of merchantability and the implied warranty of fitness by delivering contaminated milk. Following a bench trial, the district judge entered a judgment in favor of Bariven. Absolute appeals, arguing that the district court erred in finding that Bariven's April and July 2009 revocations of the milk purchases were valid. Specifically, Absolute contends that Bariven's April 2009 revocation was not timely and lacked a good faith basis. Absolute also argues that Bariven's July 2009 revocation of acceptance was not valid because "Bariven's unjustified

3

revocation on April 23, 2009 waived its right to seek further remedies." After careful consideration, we affirm the decision of the district court.

I.

Absolute contends that we do not have subject-matter jurisdiction to consider this case because Bariven, as a wholly-owned subsidiary of PDVSA, is "deemed a 'foreign state' for purposes of federal jurisdiction." Vermeulen v. Renault, U.S.A. Inc., 985 F.2d 1534, 1542 (11th Cir. 1993). Absolute argues that the Foreign Sovereign Immunities Act (FSIA) prevents us from exercising jurisdiction over Bariven and, accordingly, the district court judgment should be set aside for lack of jurisdiction. See 28 U.S.C. § 1605(a)(2).

"Under the [FSIA], a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Saudi Arabia v. Nelson, 507 U.S. 349, 355, 113 S. Ct. 1471, 1476 (1993). One exception to the FSIA "provides that a foreign state shall not be immune from the jurisdiction of United States courts in any case 'in which the action is based upon a commercial activity carried on in the United States by the foreign state.'" Id. (citing § 1605(a)(2)). "[A]n activity is commercial under the FSIA: when a foreign government acts, not as regulator of a market, but in the manner of a private player within it." Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel,

657 F.3d 1159, 1176 (11th Cir. 2011) (quotations omitted).  "This Circuit has held that where the activity at issue involves a government's contract for purchase and sale of goods, the activity is commercial, and not sovereign." Samco Global Arms, Inc. v. Arita, 395 F.3d 1212, 1216 (11th Cir. 2005).  This being the case, Bariven's contract with Absolute falls under the commercial activity exception to the FSIA and we properly exercise jurisdiction.

## II.

"On appeal following a bench trial, a district court's conclusions of law are reviewed de novo, and its findings of fact are reviewed for clear error." A.I.G. Uru. Compania de Seguros, S.A. v. AAA Cooper Transp., 334 F.3d 997, 1003 (11th Cir. 2003).

"In most cases, the reasonableness of the delay [of revocation of acceptance in a contract] is a fact question." Central Fla. Antenna Serv., Inc. v. Crabtree, 503 So.2d 1351, 1353 (Fla. 5th DCA 1987).  However, in some cases, the validity of a revocation is decided as a matter of law.  See Royal Typewriter Co., a Div. of Litton Bus. Sys., Inc. v. Xerographic Supplies Corp., 719 F.2d 1092, 1106 (11th Cir. 1983).  Where the buyer gives some notice of the breach, the issues of

5

timeliness and sufficiency are questions of fact. See T.J. Stevenson & Co. v. 81,193 Bags of Flour, 629 F.2d 338, 359 (5th Cir.1980).[2]

### III.

Absolute argues that Bariven's April 2009 revocation was unreasonable because it occurred seven months after the melamine alert. Florida law requires that "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it." Fla. Stat. § 672.608 (2012). "Whether a time for taking an action required by this code is reasonable depends on the nature, purpose, and circumstances of the action." Fla. Stat. § 671.204(1) (2012).

Here, Bariven's delay in revoking the milk is explained by the several obstacles that Bariven faced in testing the milk for melamine. First, Bariven unsuccessfully searched for a laboratory in Venezuela with the capacity to test for melamine. After learning that the milk would have to be sent to the United States for testing, Bariven sent the samples to the Clover customs agency in October 2008. Bariven later learned that Clover was unable to send the samples to the United States because it lacked the requisite USDA and FDA permits. In March 2009, after contacting at least one other carrier, Bariven finally located the SGS-Venezuela company with the requisite licenses and arranged for the samples to be

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), this Court adopted as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981.

sent to this customs agent. In turn, SGS-Venezuela sent the samples to the

PDVSA in United States. Finally, PDVSA sent the samples to the laboratory. On

March 27, 2009, the laboratory informed Bariven that unsafe levels of melamine

were present in all twenty samples of the milk. In light of these circumstances, the

delay in revocation was reasonable.

Our conclusion that the delay was reasonable is further supported by the fact

that Bariven notified Absolute of the contamination less than a week after

receiving the test results. Upon receiving this notice, Absolute understood that

"Bariven was revoking the milk that we sold them because they claimed it had

melamine." Thus, consistent with Florida law, Bariven revoked the milk purchases

within a reasonable time after discovery of the melamine contamination. See Fla.

Stat. § 672.608.[3]

## IV.

Absolute argues that Bariven's April 2009 revocation lacked a good faith

basis because Bariven revoked all nineteen milk shipments with knowledge of

contamination in only one shipment. Specifically, Absolute contends that the trial

---

[3] The district court found that "Bariven's acceptance of shipments 10–19 was induced by a combination of difficulty of discovery and Absolute's assurances." On appeal, Absolute argues that Bariven's independent testing of the milk proves that it did not rely upon Absolute's assurances. We agree with Bariven that its "precautionary decision to sample and test Absolute's milk . . . made sense in light of the[] public safety issues and, as such, was not incompatible with its reliance on Absolute's assurances." For example, even though China stopped its own milk exports because of the contamination, Bariven did not revoke the milk purchases for several months after receiving assurances from Absolute.

7

court improperly found Bariven's revocation valid when the "shipments were from two different suppliers and the test results were from a single shipment from only one supplier who supplied less than 10 percent of the milk."  Thus, Absolute argues it is impossible for Bariven to show that all shipments were in non-conformity at the time of the April 2009 revocation.[4]

Florida law provides that a "buyer may revoke her or his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to her or him if she or he has accepted it." Fla. Stat. § 672.608.  "[T]he 'value' to the purchaser . . . is to be measured by the essential purpose to be served by the buyer's purchase of the goods in the first place.  If such purpose is substantially frustrated or interfered with by 'non-conformities,' then . . . the 'value' of the goods has been 'substantially impaired.'"  Barrington Homes of Fla., Inc. v. Kelley, 320 So.2d 841, 843 (Fla. App. 1975). Here, the milk was purchased because of extensive food shortages in Venezuela.  The value of the milk was impaired because it was potentially lethal.  In view of the potential hazards and liabilities of distributing the

---

[4] In a related argument, Absolute asserts that the agreement was an installment contract, such that Bariven was permitted only to revoke shipment three based on non-conformity.  However, Florida law explains that when non-conformity "with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole."  Fla. Stat. § 672.612(3) (2012).  Here, the contamination substantially impaired the value of the whole contract.  As described by the district court, the purpose of "the contract from Bariven's perspective was to obtain a very large quantity of milk to distribute to the Venezuelan public" and Bariven could not distribute the milk because of its potentially lethal nature.  See Barrington Homes of Fla., Inc. v. Kelley, 320 So.2d 841, 843 (Fla. 2d DCA 1975) (substantial impairment "must be subjectively measured from the standpoint of the purchaser").  Thus, Bariven's revocation was not improper on this ground.

contaminated milk, Absolute's argument that Bariven's revocation lacked good faith is not persuasive. We agree with the district court that Bariven's discovery of the melamine contamination in shipment three "called critically into question the safety of each of the other shipments, and provided Bariven with a basis to infer that the other shipments were contaminated as well."

## V.

The district court found that even if the April 2009 revocation was improper, the July 9, 2009 letter from Bariven to Absolute properly revoked the first nineteen shipments and cancelled the twentieth shipment. Absolute contends that the district court erred in so finding because "Bariven's unjustified revocation on April 23, 2009 waived its right to seek further remedies upon wrongful revocation." Specifically, Absolute contends that because Bariven's revocation on April 23, 2009 was invalid, Bariven was in breach of the contract from that time forward. Absolute's argument here misses the mark because, as set out above, Bariven's April 2009 revocation was not invalid.

For these reasons, we affirm the judgment of the district court.

**AFFIRMED**.