[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13083
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-22663-UU

Case No. 1:12-cv-23600-UU

LYLLE ARAYA-SOLORZANO,
a Citizen of the United States of America,

Plaintiff-Appellant,

versus

GOVERNMENT OF THE REPUBLIC OF NICARAGUA,
THE INSS INSTITUTO NICARAGUENSE DE SEGURIDAD SOCIAL,
autonomous agency,

Defendants-Appellees,

SECRETARY OF STATE OF THE UNITED STATES OF AMERICA,

Defendant.

_____

Case No.: 1:12-cv-23600-UU

ROBERTO B. SOLORZANO,
a citizen of the United States of America,

Plaintiff-Appellant,

versus

THE GOVERNMENT OF THE REPUBLIC OF NICARAGUA,
and its autonomous agency the INSS Instituto Nicaraguense de Seguridad Social,

Defendants-Appellees,

SECRETARY OF COMMERCE OF THE UNITED STATES OF AMERICA,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 10, 2014)

Before PRYOR, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

This appeal arises from two breach-of-contract and unjust-enrichment

actions filed against the Government of the Republic of Nicaragua and the Instituto

Nicaraguesnse de Seguridad Social (INSS), a government agency (collectively

2

Nicaragua), by Lylle Araya-Solorzano and Roberto Solorzano (collectively the Solorzanos). After the district court granted a motion for default judgment against Nicaragua, and awarded damages in excess of $12 million, Nicaragua moved to vacate the award and dismiss the complaint under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605, for lack of subject-matter jurisdiction. The court granted the motion, vacated the damages award, and dismissed the complaint. The sole question before us on appeal is whether the FSIA mandated dismissal of the complaint. Because we conclude that it did, we affirm.

I.

Lylle Araya-Solorzano, Robert Solorzano, both U.S. citizens, and other members of the Solorzano family, owned eighty percent of a Nicaraguan pharmaceutical company called Laboratorios SOLKA, S.A. (SOLKA). In May 2007, SOLKA's unionized workers seized control of SOLKA facilities and turned them over to Nicaraguan control. Roberto Solorzano, acting on behalf of himself and the family, negotiated with INSS to sell the family's shares for $4 million. Roberto Solorzano also negotiated for himself the sale of one of SOLKA's trademarks for $1.3 million. Although all parties agreed to the terms of the sales, INSS never paid for the shares or the trademark. In 2012, Lylle Araya-Solorzano and Robert Solorzano, separately, filed complaints against Nicaragua for breach of

3

contract and unjust enrichment in connection with these sales.[1]   Attached to

Araya-Solorzano's complaint were copies and translations of the offer and

acceptance.  In the offer letter, the INSS executive chairman expressed interest in

obtaining the stock for 4 million.  In the response letter, Solorzano indicates that all

stockholders agree to the terms of purchase and accept 4 million in U.S. dollars.

The response letter appears on Roberto Solorzano's letterhead with an address in

Managua, Nicaragua.  Neither letter makes any reference to any other terms of the

deal.  Letters outlining the trademark purchase were attached to Roberto

Solorzano's complaint.  These, too, mention only the purchase price.

After Nicaragua failed to respond to the complaint, the Solorzanos moved

for entry of default and for default judgment.  In support of their motion, the

Solorzanos submitted an affidavit from a Nicaraguan attorney, in which the

attorney stated that the payment under the contract "was to be paid in Nicaragua."

The court tried the consolidated case as to the issue of damages only and awarded

damages, with interest, in the amount of $12.3 million.  Thereafter, Nicaragua

moved to vacate the default judgment, Fed. R. Civ. P. 60, and dismiss the

complaint on the grounds that the court lacked subject-matter jurisdiction under the

FSIA and personal jurisdiction over Nicaragua, and for insufficient process and

---

[1] Lylle Araya-Solorzano also named the Secretary of State as a defendant.  Roberto Solorzano named the Secretary of Commerce.  Both defendants have been dismissed from the underlying action, and neither Solorzano challenges the dismissal on appeal.

service of process. The district court granted the motion and vacated its order of default judgment, finding that the court lacked subject-matter jurisdiction.[2] In reaching this conclusion, the court found that Nicaragua's actions had no "direct effects" in the United States, as required to overcome Nicaragua's sovereign immunity under the FSIA. The court noted that the contract made no reference to the United States, and both the offerer and offeree were in Nicaragua at the time the deal was made. The Solorzanos now appeal.

## II.

We review jurisdictional questions *de novo*, *Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1324 (11th Cir. 2003), but we review a district court's factual findings for clear error, *Aquamar, S.A. v. Del Monte Fresh Produce*, 179 F.3d 1279, 1289-90 (11th Cir. 1999). The FSIA "provides the only basis for courts in this country to acquire jurisdiction over a foreign state. It provides that a foreign state is immune from the jurisdiction of the United States unless an FSIA statutory exemption is applicable." *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1286 (11th Cir. 2005) (citation omitted); 28 U.S.C. §§ 1604, 1605(a).[3] The only exception relevant to our discussion is if "upon an act outside the territory of

---

[2] Under Rule 60(b), the district court may vacate a final judgment where "the judgment is void." There is no question that a judgment is void if the court lacked subject-matter jurisdiction. *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001).

[3] Under the FSIA, a "foreign state" includes "agencies and instrumentalities of such states." 28 U.S.C. § 1603(a). The parties do not dispute that INSS is a "foreign state" under the FSIA.

5

the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

"[A]n activity is commercial under the FSIA: when a foreign government acts, not as regulator of a market, but in the manner of a private player within it." *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1176 (11th Cir. 2011) (quotations omitted). The purchase of stock and trademarks is a commercial activity because "it is the type of transaction that private actors could complete." *Beg*, 353 F.3d at 1325 (concluding that the government's confiscation of property was not commercial because private parties could not act in the same manner); *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614-16 (1992) (explaining that the government's issuance of bonds to finance a currency-exchange program was commercial).

A "direct effect" under the FSIA is one that follows "as an immediate consequence of the defendant's . . . activity." *Weltover*, 504 U.S. at 618 (quotations and citation omitted). The effect must be more than "purely trivial" or "remote and attenuated." *Id.* But it need not be a substantial or foreseeable effect. *Id.* "Mere financial loss by a person – individual or corporate – in the U.S. is not, in itself, sufficient to constitute a 'direct effect.'" *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 726-27 (9th Cir. 1997) (internal citation omitted); *see also*

*Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 140 (2d Cir. 2012) (the plaintiff's status as a U.S. citizen is insufficient, standing alone, to result in "direct effects" in the United States). Instead, courts "'often look to the place where the legally significant acts giving rise to the claim occurred' in determining the place where a direct effect may be said to be located." *Id.* at 727 (citing *United World Trade v. Mangyshlakneft Oil Production Ass'n*, 33 F.3d 1232, 1239 (10th Cir. 1994). Moreover, in evaluating "direct effects," we ask, "was the effect sufficiently 'direct' and sufficiently 'in the United States' that Congress would have wanted an American court to hear the case?" *Guevara v. Republic of Peru*, 608 F.3d 1297, 1309 (11th Cir. 2010) (quoting *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1351 (11th Cir. 1982) (internal citation and quotation marks omitted)).

In *Weltover*, the Supreme Court held that a breach of contract arising when Argentina unilaterally rescheduled its bonds caused direct effects in the United States because the contract designated New York as the place of payment, some payments were made before the rescheduling, and therefore money "that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Weltover*, 504 U.S. at 618. We have held that, in the context of a breach-of-contract claim, U.S.- based injuries such as an inability to ship goods to the United States, lost profits from future sales, harm to reputation, and

7

expenditures connected to the breach were too indirect and speculative to qualify as "immediate consequences." *Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1217 (11th Cir 2005). In at least one case, we have stated that the so-called "negative activity" of a foreign sovereign's failure to make a payment cannot overcome immunity under the FSIA. *Guevara*, 608 F.3d at 1310 (explaining that Peru's failure to pay reward money within the United States did not have the necessary "direct effects" under § 1605(a)(2)).

### III.

The Solorzanos argue that they can show direct effects in the United States because the money to be paid was in U.S. dollars, and the offer and acceptance for each sale were actually integrated into a single document in the United States. They contend there is no support for the district court's conclusion that the contracts were transacted in Nicaragua or that Roberto Solorzano was in Nicaragua at the time of the negotiations. They assert that the court erred by considering

8

materials outside the pleadings,[4] and it should have conducted a hearing on the matter.[5]

We are not persuaded.  Rather, we conclude that the failure to make payment in the United States in this case is the type of "negative activity" we rejected in *Guevara*.  As the district court found, and the Solorzanos do not dispute, the parties negotiated the sale in Nicaragua.  Attached to the complaint is Roberto Solorzano's acceptance letter, which is written on his letterhead with a Nicaraguan address.  Second, according to the affidavit of the Solorzanos' expert, the contract was to be paid in Nicaragua, and no payments had been made in the United States.  *Cf. Weltover*, 504 U.S. at 618 (finding there were direct effects in the United States where some payments under the contract had already been made here).  The only

---

[4]  Attacks on the court's subject-matter jurisdiction are either facial or factual attacks.  *See, e.g.*, *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335-36 (11th Cir. 2013).  "In a factual challenge to subject matter jurisdiction, a district court can 'consider extrinsic evidence such as deposition testimony and affidavits.'  In so doing, a district court is 'free to weigh the facts' and is 'not constrained to view them in the light most favorable' to the plaintiff."  *Id.* at 1336 (internal citation omitted).  Accordingly, we conclude there was no error in the court's consideration of the affidavit.

[5] The Solorzanos also argue that: Nicaragua implicitly waived its sovereign immunity because its behavior was so grossly unfair; jurisdiction is proper because this is where the offer and acceptance were integrated; and the Uniform Commercial Code provides for delivery at the buyer's residence.  We decline to address these arguments, which are raised for the first time on appeal.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (explaining that this court will not consider issues raised for the first time on appeal).  Finally, the Solorzanos explicitly stated in their response to the defendants' motion for a hearing that the court could decide the motion to vacate judgment on the motion and responses.  They cannot now argue that it was error for the court to do so without a hearing.  *See F.T.C. v. AbbVie Prod., LLC*, 713 F.3d 54, 65 (11th Cir. 2013) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling . . . invited by that party." (internal citation and quotation marks omitted)).

9

connection with the United States is that the Solorzanos live here, they are U.S. citizens, and they included in their acceptance letter that they would be paid in U.S. dollars. These facts alone are insufficient, *see Rogers*, 673 F.3d at 140, and the Solorzanos offer no other explanation to show how there are direct effects here.

Moreover, as the Solorzanos repeatedly explain, the payment could have been made in any one of a number of countries because the family members agreeing to the sale lived all over the world. The effects were no less direct in those locations. That payments could have been made in multiple places makes the direct effects here more "speculative." *See Samco Global* Arms, 395 F.3d at 1217 (discussing speculative and indirect harm). Thus, the failure to make the payment, although perhaps felt by the Solorzanos here, was not sufficiently "direct" or sufficiently "in the United States" to show that Congress wanted the U.S. courts to hear this case. *See Guevara*, 608 F.3d at 1309 (internal citation omitted). Accordingly, we affirm the district court's dismissal for lack of subject-matter jurisdiction under the FSIA.

**AFFIRMED.**